RECEIVED
IN ALEXANDRIA, LA

MAR - 9 2009

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| STEPHEN MCGILL<br>D.O.C. #339992 | DOCKET NO. 08-cv-0923; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| CORRECTIONS CORPORATION OF<br>AMERICA, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed by Plaintiff **Stephen McGill (DOC# 339992)**, pro se and in forma pauperis, on June 24, 2008. Plaintiff was ordered to amend his complaint, and he filed an amended complaint on December 22, 2008. [Doc. #15] Plaintiff is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (LDOC) and is housed at Winn Correctional Center (WCC) in Winnfield, Louisiana. In Plaintiff's original complaint, *which is an identical copy of the complaint filed by Inmate Michael Sampson in docket number 08-CV-915*,[1] Plaintiff sought injunctive and declaratory relief on a class-wide basis. In his amended complaint he also requests punitive damages.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28

---

[1]Seven WCC inmates filed complaints identical to Sampson's in this District Court.

1

U.S.C. §636 and the standing orders of the Court.

**FACTS ALLEGED**

Plaintiff filed the instant lawsuit setting forth claims on behalf of himself and seven other inmates, all of whom contemporaneously filed identical claims. The Plaintiff seeks class certification. In the original complaint, McGill named as defendants: Corrections Corporation of America (CCA), Warden Tim Wilkinson, Deputy Warden Tim Morgan, Deputy Warden Angel A. Martin, Chief of Security Virgil Lucas, Governor Bobby Jindal, and LDOC Secretary James LeBlanc. In the amended complaint, he added the following as defendants: Dr. Alphonso Pacheco, Medical Director Pat Thomas, K-9 Officer Tolar, Officer Bell Watson, Officer Triplett, Officer MacDonald, and Dr. Wheat.

In the original complaint, Plaintiff claimed, generally, that overcrowding at WCC and certain policies and procedures of LDOC and CCA have led to the violation of his constitutional rights, as well as the rights of other inmates at WCC. Plaintiff also alleged that he was personally subjected to excessive force by the staff, abusive and arbitrary punishment, inadequate mental health care, lack of substance abuse counseling, and a lack of security and control.

Because Plaintiff filed an exact duplicate of Inmate Sampson's complaint, which provided only conclusory and generalized allegations, the Court ordered Plaintiff to amend the complaint and

allege facts to support the conclusion that **his** constitutional rights were violated by each named defendant. The undersigned explained exactly what factual information Plaintiff needed to provide in the amended complaint. [Doc. #11] McGill filed a handwritten amended complaint presenting some new factual allegations, addressed below.

## LAW AND ANALYSIS

As to the general averments of the original complaint regarding the conditions of his confinement, Plaintiff does not allege, nor does he provide documents that would indicate that *he* was ever subjected to the following: use of chemicals such as tear gas and pepper spray to punish or threaten; use of four and five point hand restraints used for mentally ill inmates, without cause and without proper monitoring; placement in isolation for arbitrary reasons and without proper monitoring; victim of harm by other inmates due to inadequate staffing and unsupervised or improperly trained guards; victim of the practice of "kicking out," where larger inmates force young or fragile inmates to give up food items or personal belongings under threats of violence; having a "hit" placed on him or being "hired" to beat up another inmate; denial of disciplinary hearing; uninvestigated complaints of abuse by guards or thwarted efforts at contacting PZT (project zero tolerance); lack of nutritional meals; lack of privacy in bathrooms; insufficient clothing, shoes, and linens; inadequate access to the

courts; or retaliation for accessing the courts.

In his amended complaint, Plaintiff raises the claims discussed below.

1.  **Defendant Angel Martin**

Plaintiff alleges that a sexual battery was committed upon him by Dr. Pacheco. After reporting the incident to Sargent Powell through the administrative remedy process, Defendant Angel Martin called Plaintiff to the courtroom and threatened to place him in the "cellblock" if he discussed the incident with anyone other than herself and Warden Wilkinson. Plaintiff claims that this threat prevented him from seeking mental health counseling.

To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Rosas v. Rodriquez, 2006 WL 1877282, 1 (5th Cir. 2006)(citing Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir.1999)). The inmate must allege more than his personal belief that he is the victim of retaliation. See Jones v. Greninger, 188 F.3d at 325. "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.' Id. (citing Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).

In the Eighth Amendment context, the Fifth Circuit has

recognized as a general rule that "mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations." Robertson v. Plano City of Texas, 70 F.3d 21, 24 (5th Cir. 1995); Peterson v. Peshoff, 216 F.3d 1079 (5th Cir. 2000)(unpublished)("Although the district court did not address his claim of retaliation with respect to filing grievances, Peterson's allegations that he was threatened for filing grievances do not state a claim.").

Even if Martin's actions were motivated by retaliatory intent, they were *de minimis*. The Fifth Circuit has stated that some acts, although motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. Those acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. Morris v. Powell, 449 F.3d 682, 686 (5th Cir. 2006). While Plaintiff claims the threat of being placed in "the cellblock" deterred him from seeking counseling for the alleged sexual assault by Pacheco, it certainly did not deter him from raising the "assault" in his amended complaint filed in this Court.

Plaintiff has failed to present anything other than conclusory allegations of retaliation. Additionally, he has not alleged that injunctive relief is necessary in order to prevent a substantial risk of serious injury from ripening into actual harm. Farmer v. Brennan, 511 U.S. 825, 845 (1994).

5

## 2. Defendant Dr. Wheat

Plaintiff states that he is being treated by Dr. Wheat for anxiety. [Doc. #15, p.9] He alleges that he was prescribed Paxil while incarcerated at Forcht Wade Correctional Center at the end of April 2008, and he began receiving the medication at WCC on May 17, 2008. His medication was changed in September and again in November. Plaintiff claims that the doctor "does nothing about my problems with anxiety" and "just gives me pills that don't help." [Doc. #15, p.9-10]

Prison officials have a duty to ensure that inmates receive adequate medical care. See Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006) "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" Easter, 467 F.3d at 463 (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991); Estelle v. Gamble, 429 U.S. 97 (1976)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006)(citations omitted). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints,

6

intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. See id. (citations omitted).

Plaintiff is clearly dissatisfied with the treatment that he is receiving from Dr. Wheat. However, he does not allege that Dr. Wheat has refused to treat him, ignored his complaints, or intentionally treated him incorrectly. According to Plaintiff, Dr. Wheat has prescribed several medications, presumably in an effort to find one that treats Plaintiff's symptoms, as Plaintiff reports that none of the medications work. Plaintiff's allegations amount to nothing more than a disagreement with medical care.

### 3. Defendant K-9 Officer Tolar

Plaintiff claims that he was subjected to excessive force by Officer Tolar on August 19, 2008. Plaintiff alleges that Tolar singled him out during a shakedown while Plaintiff was standing in the doorway of the television room. [Doc. #15, p.11] Plaintiff alleges that Tolar handcuffed his hands behind his back and pulled his arms in the air, causing Plaintiff's shoulders to "twist." Tolar then escorted Plaintiff from the tier and made a verbal threat that "he hadn't gotten rough yet." Plaintiff claims that Tolar acted maliciously and sadistically to cause harm.

When a plaintiff alleges excessive force by a prison official, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously

and sadistically to cause harm. <u>Hudson v. McMillian</u> 503 U.S. 1, 7 (1992). In determining whether the use of force was wanton and unnecessary, the court considers the extent of the injury suffered, the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. <u>Id.</u> (citations and internal quotation marks omitted). The Supreme Court has recognized that the Eighth Amendment includes an "objective component": in considering a prisoner's claim, the court must ask if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. <u>See</u> <u>id.</u> at 8 (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. <u>Id.</u> "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" <u>Id.</u> at 9-10 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986)).

The facts provided by Plaintiff are that a shakedown was being conducted in Plaintiff's tier, that Plaintiff was standing in the doorway at the time of the shakedown, that Officer Tolar "singled out" the plaintiff and handcuffed him, and that Plaintiff's arms

8

were pulled during the handcuffing process. Plaintiff claims that Tolar exceeded the amount of force necessary and showed sadistic intent by his threats. Plaintiff does not allege any other force applied after the cuffing. Taking Plaintiff's allegations as true, the "force" alleged by Plaintiff was used during a shakedown - to maintain or restore discipline - and is not of a sort repugnant to the conscience of mankind. Plaintiff does not complain that he required or sought any medical treatment or suffered any injury. The force applied was de minimis.

### 4. Defendant Dr. Pacheco

Plaintiff claims that on October 6, 2008, he was a victim of sexual battery by Dr. A. Pacheco. He alleges that, after an asthma evaluation, Pacheco closed the door to the exam room and ordered Plaintiff to stand and pull down his pants. He alleges that Dr. Pacheco "fondled" Plaintiff's penis and testicles without consent. Plaintiff claims that he reported the incident to Deputy Warden Martin and was told that he would be locked in the "cell block" if he told anyone of the doctor's conduct. [Doc. #13, p.4] Plaintiff claims that he was harassed by Officer Bell a few days later for no reason.

In a First Step Response Form dated 10-20-08, it is noted that an investigation was conducted into Plaintiff's claims regarding Dr. Pacheco. Dr. Pacheco told investigators that he did see Plaintiff on the date in question for pulmonary clinic as a follow

up to evaluate Plaintiff's asthma. [Doc. #15, p.36] As part of the evaluation, Pacheco performed a general physical exam with a finding of weight loss of thirteen pounds since a visit on April 9, 2008. Pacheco ordered blood tests to inquire about the cause of the weight loss. Pacheco stated that the examination encompassed pulmonary symptoms and did not include any physical examination of the rectal or genital area. WCC staff noted that there was nothing to substantiate Plaintiff's claim, and his allegation was deemed unfounded and without merit. [Doc. #15, p.36]

Sexual abuse of a prisoner by prison officials may, under some circumstances, violate the prisoner's right to be free of cruel and unusual punishment under the Eighth Amendment. See Boddie v. Schnieder, 105 F.3d 857, 860-61 (2d Cir. 1997). Sexual assault violates the Eighth Amendment only if it meets a two-part test consisting of an objective element and a subjective element. First, the sexual abuse or assault must be objectively, **sufficiently serious**; second, the prison officials involved must have acted with **deliberate indifference**, i.e., a sufficiently culpable state of mind. See Boddie, 105 F.3d at 861; Harper v. Showers, 174 F.3d 716, 719-720 (5th Cir. 1999); Copeland v. Nunan, No. 00-20063, 2001 WL 274738, *2 (5th Cir. Feb. 21, 2001). *Not every incident of sexual abuse will meet this test.* Only "severe or repetitive" sexual abuse rises to the level of an Eighth Amendment violation. See Boddie, 105 F.3d at 861.

"[S]exual assaults against inmates by prison guards without lasting physical injury may be actionable under the Eighth Amendment as acts which are offensive to human dignity. However, not every malevolent touching gives rise to a federal cause of action." Copeland, 2001 WL 274738, *2 (internal quotations omitted)(citing Hudson v. McMillan, 503 U.S. 1 (1992). Simply put, as discussed above, a prisoner can not recover under section 1983 for de minimis physical and/or psychological injuries. Plaintiff claims that on one particular date, Dr. Pacheco "committed sexual battery, sexual misconduct, and medical malpractice by his actions" of fondling Plaintiff's genitals. Following the reasoning of both Boddie, 105 F.3d at 861 (inmate was allegedly verbally harassed, fondled, and pressed against without his consent) and Copeland, 2001 WL 274738, *3 (inmate suffered unwanted touchings), Plaintiff has failed to state an Eighth Amendment claim. He has not alleged a physical injury and has alleged nothing beyond merely a de minimis psychological injury. The single incident is not severe enough to be objectively sufficiently serious or egregious to state a constitutional violation. While the incident, if true, may potentially be the basis of a state tort action, such conduct does "not involve a harm of federal constitutional proportions as defined by defined by the United States Supreme Court," especially in the absence of physical injuries and in the presence of only de minimis claimed psychological injuries on the part of McGill. See

Boddie, 105 F.3d at 861; Copeland, 2001 WL 274738, *3.

Simply put, Plaintiff has alleged intentional tort, malpractice, and misconduct rather than the kind of "severe and repetitive" abuse or wanton and sadistic infliction of pain that rises to the level of an Eighth Amendment violation.[2] The Court finds Pacheco's alleged conduct to be similar to the type of conduct that has been held insufficient to establish an Eighth Amendment violation.[3] Accordingly, McGill's section 1983 claims against Dr. Pacheco relating to sexual abuse and harassment should be dismissed with prejudice.

---

[2] Cf. e.g., Schwenk v. Hartford, 204 F.3d 1187 (9th Cir. 1999) (repeated requests for oral sex and attempted rape of inmate by prison guard may establish Eighth Amendment claim); U.S. v. Walsh, 194 F.3d 37 (2d Cir. 1999)(officer who repeatedly steps on inmate's penis to wantonly inflict pain violates inmate's right to be free of cruel and unusual punishment); Berry v. Oswalt, 143 F.3d 1127 (8th Cir. 1998)(rape and harassment of inmate, including propositions, sexual comments, and attempts to perform nonroutine pat-downs violated inmate's Eighth Amendment right to be free from cruel and unusual punishment).

[3] See, Washington v. City of Shreveport, 2006 WL 1778756 *6 (W.D. La. June 26, 2006)(citing Berryhill v. Schriro, 137 F.3d 1073 (8th Cir. 1998)(touching of inmate's buttocks by prison employees, though inappropriate and sanctioned by prison, does not violate the Eighth Amendment) and Buckely v. Dallas County, No. 397-CV-1649BC, 2000 WL 502845, *5 (N.D. Tex. April 27, 2000) (prison guards' fondling of inmate in an inappropriate manner while conducting a routine pat-down search and stopping when inmate did not become excited does not violate Eighth Amendment)).

### 5. Defendant Medical Director Pat Thomas

Plaintiff claims that Pat Thomas is responsible for supervising the doctors and nurses at WCC. He alleges that he was prescribed medication twice by a specialist at LSU after an operation on June 30, 2008, but that Pat Thomas denied him the medication. Plaintiff has alleged negligence, at best. The only allegation provided regarding Defendant Thomas is that she denied him medication prescribed by a doctor at LSU. Plaintiff has an obligation to provide the grounds of his entitlement to relief; and, despite being instructed to do so, Plaintiff failed to provide sufficient factual allegations.

Even if Thomas failed to give Plaintiff medication prescribed by an LSU physician, that fact, in and of itself, does not state a claim for a constitutional violation. The Winn medical doctor could simply have disagreed with the treatment prescribed by the other physician. A difference of opinion as to treatment does not give rise to a constitutional violation. See Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997). Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. See Harris v. Hegman, 198 F.3d 153, 159 (5th Cir. 1999)(citing Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993)). Allegations of negligence and medical malpractice will not suffice to demonstrate an Eighth Amendment claim. See Gibbs v. Grimmette, 254 F.3d 545,

13

549 (5th Cir. 2001).

Moreover, Plaintiff has not alleged that he suffered any injury whatsoever from the alleged denial of medication. A prisoner must allege an injury that is more than de minimis, although it need not be significant. See Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999); Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997). To the extent that Plaintiff seeks to hold Thomas liable as "responsible for supervising the Dr. and nurses," his claim is frivolous. A supervisor may not be held liable for a civil rights violation under a theory of respondeat superior or vicarious liability. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Evett v. DETNTFF, 330 F.3d 681, 689 (5th Cir. 2003).

### 6. Defendant Virgil Lucas

Plaintiff provides no specific factual allegations involving Defendant Lucas. He complains that Lucas is the head of security and that Plaintiff submitted an administrative remedy form because an inmate stole 75 pieces of chicken from the kitchen and passed by several guards carrying the box of chicken, which could have held knives. He complains that the inmate was only caught because another inmate reported the thief selling chicken, and that nothing was done about the situation by Defendant Lucas. Plaintiff's claim is frivolous.

### 7. Defendant C.O. Watson

Plaintiff complains that, on November 13, 2008, he was harassed at pill call by Defendant Watson. Plaintiff alleges that, upon leaving the pill call window, Watson asked him if Plaintiff took any pills. Plaintiff stated, "yes," and Watson told Plaintiff that his tone of voice was sarcastic. Plaintiff alleges that he "reported this unusual and unprovoked attack to shift supervisor Maxwell." Plaintiff states that "this is another incident of harassment since filing an A.R.P. on Warden Martin." [Doc. #15, p.18]

Plaintiff's complaint of "harassment" is frivolous. Even threatening language or gestures by an officer do not amount to constitutional violations, McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983), *cert. denied*, 464 U.S. 998 (1983), nor does verbal abuse or harassment, Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997). Thus, to the extent that Plaintiff claims the defendants harassed him in retaliation for filing an A.R.P., his claim is frivolous, as well. He has not alleged a specific constitutional right, the defendant's intent to retaliate against the prisoner for his or her exercise of that right, a retaliatory adverse act, or causation as required to support an allegation of harassment. See Rosas v. Rodriguez, 2006 WL 1877282, 1 (5th Cir. 2006)(citing Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir.1999)).

## 8. Defendants Triplett and Macdonald

Plaintiff alleges that Officer Triplett and Officer Macdonald are liable for retaliation and harassment. He alleges that, on December 5, 2008, at 4:30 p.m., a guard called everyone to the bars for the last meal. Officer Macdonald approached Plaintiff and said, "Give me your I.D." Plaintiff asked, "Why?" Officer Macdonald then informed Plaintiff that Triplett was writing Plaintiff up for a Rule 21 sex offense. [Doc. #15, p.19] Plaintiff then went to Supervisor Maxwell and reported harassment by Officer Macdonald. When Plaintiff returned, Officer Macdonald was laughing and said that he was just joking about the write-up. Plaintiff argues that this shows malicious intent to cause harm. Plaintiff's complaint of "harassment" is frivolous and trivial. As noted above, verbal abuse or harassment does not amount to a constitutional violation. See Siglar v. Hightower, 112 F.3d 191. In this instance, no threats were made and Plaintiff was not injured in any way.

Plaintiff has not alleged that injunctive relief is necessary in order to prevent a substantial risk of serious injury from ripening into actual harm, Farmer v. Brennan, 511 U.S. 825, 845 (1994), nor is he entitled to monetary damages. His claim is entirely frivolous and should be dismissed.

## CONCLUSION

For the foregoing reasons, *and for the reasons set forth*

*in the Report and Recommendation filed in the civil rights case of Michael Sampson, docket number 1:08-CV-915*, it is **RECOMMENDED** that Plaintiff's claims be **DISMISSED** as frivolous under 28 U.S.C. §1915(e)(2)(b).

Under the provisions of 28 U.S.C. §636(b)(1)(©) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglas v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED, in Chambers at Alexandria, Louisiana, this 9th day of March, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE